# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| DENNIS E. LOGGINS, | ) |
|     Plaintiff, | ) |
| v. | )   No. 2:17-cv-2688 |
| COSTCO WHOLESALE CORPORATION d/b/a "COSTCO," | ) |
|     Defendant. | ) |

## ORDER

Before the Court is Defendant Costco Wholesale Corporation's ("Costco") September 17, 2018 Motion for Summary Judgment. (ECF No. 28.) Plaintiff Dennis E. Loggins responded on January 7, 2019, after receiving several extensions. (ECF No. 39.) Costco replied on January 25, 2019. (ECF No. 43.)

For the following reasons, Costco's Motion for Summary Judgment is GRANTED.

## I. Background

Loggins, an African-American man over the age of forty, began working at Costco in December 2014 as a Bakery Manager in Costco's Northeast Memphis warehouse. (ECF No. 39-2 at 734.)[1] In September 2015, he was demoted to Baker and transferred to Costco's Southeast

---

[1] Unless otherwise noted, all pincites are to the "PageID" number.

Memphis warehouse. (Id. at 740.)[2] Loggins was directly supervised in his new position by Chris Kaufman. (Id.)

Loggins received five counseling notices after starting at the Southeast Memphis warehouse. He received two for excessive absenteeism, one in April 2016 and one in August 2016. (Id. at 740-41.) He received one on August 30, 2016 for failing to swipe out at the end of his shift three times within thirty days. (Id. at 744.) He received one on October 7, 2016 for working overtime without authorization. (Id.) He received one on February 7, 2017 for disobeying company rules. (Id. at 746.) Loggins remains a Costco employee, and none of the counseling notices resulted in a decrease in pay, a change in job duties, a demotion, or otherwise affected Loggins's employment status. (Id. at 749.)

On August 24, 2016, Loggins wrote a letter to Costco's CEO. (Id. at 741.) Loggins said he had been demoted from his Bakery Manager position based on race and age discrimination. (Id.) Loggins also said that Kauffman had subjected him to daily harassment, including "frivolous write-ups" and "disparaging comments about [his] age and fitness for the job." (Id. at 742.) After receiving the August 30, 2016 and October 7, 2016 counseling notices, Loggins called Scott Riekers, a Costco human resources

---

[2] The 2015 demotion is not a cause of action in this case. (ECF No. 39-2 at 736.)

manager, and said the counseling notices were in retaliation for Loggins' August 24, 2016 letter. (Id. at 745.)

On February 13, 2017, Loggins again contacted Riekers and said his February 7, 2017 counseling notice was in retaliation for his filing a workers compensation claim. (Id. at 746.) On March 3, 2017, Costco received a memorandum from Loggins that said his February 7, 2017 counseling notice was discriminatory and issued in retaliation for his earlier complaints of discrimination about his demotion. (Id. at 747-48.)

On March 13, 2017, Loggins' attorney sent a letter to Costco's corporate headquarters that asserted Costco was harassing and discriminating against Loggins based on his race and in retaliation for his having filed workers compensation claims against Costco. (Id. at 748.) On June 28, 2017, the EEOC issued a Notice of Right to Sue to Loggins. (Id.) Loggins filed this lawsuit on September 18, 2017. (Id.)

Loggins filed for Chapter 13 bankruptcy on April 1, 2013, which was voluntarily converted to a Chapter 7 bankruptcy on June 13, 2013. (Id. at 749.) The bankruptcy court issued its final decree on April 4, 2017. (Id.) Loggins never disclosed any claim against Costco to the bankruptcy court. (Id.)

Loggins brings claims against Costco for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

3

§§ 621 et seq.; race discrimination under Title VII, 42 U.S.C. §§ 2000e et seq., and 42 U.S.C. § 1981; retaliation under the ADEA and Title VII; hostile work environment based on his age under the ADEA and on his race under Title VII and Section 1981; and intentional and/or negligent infliction of emotional distress under Tennessee law. (ECF No. 1 at 9-11.)

Loggins contends that, since starting as a Baker in the Southeast Memphis Warehouse, Kaufman has called him an "old man" and "too slow" on several occasions. (ECF No. 39-1 at 716.) He contends that Costco employees have heard other employees call Loggins "old man." (Id.) He contends that others working at the Southeast Memphis warehouse were called "old" and treated differently because of their age. (Id.) He contends that Kaufman once gave him an energy drink while on the job, telling Loggins that it would speed up his work and help him move faster. (Id. at 716-17.)

Loggins contends that Clay Cooper -- a white male baker at the Southeast Memphis warehouse under forty years old -- regularly engaged in the same conduct that caused Loggins to get poor performance reviews and counselling notices, but that Cooper was never similarly reprimanded. (Id. at 719.) Loggins also contends that Jimmy Sommerville, another African-American Costco employee at the Southeast Memphis warehouse, told Loggins that Don Bowden,

4

the Southeast Warehouse General Manager, used a racial epithet to describe Sommerville. (ECF No. 39-2 at 752.)

Loggins contends that his August 30, 2016, October 7, 2016, and February 7, 2017 counseling notices were in retaliation for the internal discrimination complaint he made on August 24, 2016. (ECF No. 39-1 at 724.)[3] Loggins also contends that he was given "write-ups" that "tend[ed] to track the dates of Loggins' protected activities." (Id.)

Loggins contends that Costco created a hostile work environment based on his race and age because he received frequent counseling notices and trips to the office, because Kaufman told him on ten to fifteen occasions that he was "too old" or "too slow," because Kaufman gave him an energy drink, because Bowden once told him that he "'did not hire [Loggins] because he was too old,' but that he hired him because he was an experienced baker," because Bowden used a racial epithet to describe Sommerville, and because Bowden also used a racial epithet in conversation with Jamie Boslaugh, a white female employee married to an African-American man. (ECF No. 39-2 at 752-53.)

---

[3] In his response brief, Loggins references counseling notices given on three dates -- October 15, March 16, and April 16 of unspecified years -- that do not correspond to any counseling notices identified in Loggins' responses to Costco's statement of undisputed material facts. (ECF No. 39-1 at 724.) Loggins cites no evidence for these alleged counseling notices. Because Loggins admits that he was issued counseling notices on August 30, 2016, October 7, 2016, and February 7, 2017, (ECF No. 39-2 at 744, 746), the Court understands his response brief to mean these counseling notices when it refers to the alleged counseling notices of October 15, March 16, and April 16.

## II. Jurisdiction

The Court has federal question jurisdiction. Under 28 U.S.C. § 1331, district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." Loggins asserts a right to relief against Costco under Title VII, Section 1981, and the ADEA. Those claims arise under the laws of the United States.

The Court has supplemental jurisdiction over Loggins' state-law claim. See 28 U.S.C. § 1367(a). That claim derives from a "common nucleus of operative fact" with Loggins' federal claims against Costco. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966); Soehnlen v. Fleet Owners Ins. Fund, 844 F.3d 576, 588 (6th Cir. 2016); see also 28 U.S.C. § 1367(a).

## III. Standard of Review

Under Federal Rule of Civil Procedure 56, a court must grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must show that the nonmoving party, having had sufficient opportunity for discovery, lacks evidence to support an essential element of its case. See Fed. R. Civ. P. 56(c)(1); Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018).

When confronted with a properly-supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). "A 'genuine' dispute exists when the plaintiff presents 'significant probative evidence' 'on which a reasonable jury could return a verdict for her.'" EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (en banc) (quoting Chappell v. City of Cleveland, 585 F.3d 901, 913 (6th Cir. 2009)). The nonmoving party must do more than simply "show that there is some metaphysical doubt as to the material facts." Lossia v. Flagstar Bancorp, Inc., 895 F.3d 423, 428 (6th Cir. 2018) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (quotation marks and citations omitted).

**IV. Analysis**

**A. Judicial Estoppel**

Costco contends that all of Loggins' claims are barred by judicial estoppel because he never disclosed them during his

7

Chapter 7 bankruptcy proceedings. Costco's argument is not well-taken.

Judicial estoppel is an equitable doctrine that "protect[s] the integrity of the judicial process . . . ." New Hampshire v. Maine, 532 U.S. 742, 743 (2001). It "prevents a party from . . . achieving success on one position, then arguing the opposite to suit an exigency of the moment." Teledyne Indus., Inc. v. N.L.R.B., 911 F.2d 1214, 1218 (6th Cir. 1990). "In order to invoke judicial estoppel, a party must show that the opponent took a contrary position under oath in a prior proceeding and that the prior position was accepted by the court." Id. Judicial estoppel can bar causes of action that were previously undisclosed to a bankruptcy court during bankruptcy proceedings. See Lewis v. Weyerhaeuser Co., 141 F. App'x 420, 425 (6th Cir. 2005).

Judicial estoppel does not apply here. The property of a Chapter 7 estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," including causes of action. In re Senior Cottages of Am., LLC, 482 F.3d 997, 1001 (8th Cir. 2007) (quoting 11 U.S.C. § 541(a)(1)). "[A] Chapter 7 estate does not include . . . the assets [a debtor] acquires after the bankruptcy filing." Harris v. Viegelahn, 135 S.Ct. 1829, 1835 (2015) (citing 11 U.S.C. § 541(a)(1)) (emphasis in original). There is no dispute that Loggins' claims accrued

after he filed for bankruptcy. His claims were not the property of his Chapter 7 estate. Pursuing his claims in this case is not inconsistent with his position in bankruptcy court.[4]

**B.   State Law Claim**

Loggins "agrees" with Costco "that this claim should be dismissed." (ECF No. 39-1 at 727.) Costco's Motion for Summary Judgment on Loggins' state law claim for intentional and/or negligent infliction of emotional distress is GRANTED.

**C.   Race and Age Discrimination**

Only someone who has suffered an adverse employment action can sustain a race discrimination claim under Title VII and Section 1981 or an age discrimination claim under the ADEA. See Fox v. Eagle Distrib. Co., 510 F.3d 587, 591 (6th Cir. 2007); Mitchell v. Vanderbilt Univ., 389 F.3d 177, 181 (6th Cir. 2004); Policastro v. Northwest Airlines, Inc., 297 F.3d 535, 539 n.1 (6th Cir. 2002). An adverse employment action is "a materially adverse change in the terms and conditions of [a plaintiff's] employment" such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Redlin v. Gross Pointe Pub. Sch. Sys., 921 F.3d 599, 607 (6th Cir. 2019) (first quoting Spees

---

[4] Costco's reference to a continuing duty to disclose is inapposite. That duty applies in Chapter 13 proceedings, not Chapter 7 proceedings. See Harris, 135 S.Ct. at 1835 (citing 11 U.S.C. § 1306(a)).

v. James Marine, Inc., 617 F.3d 380, 391 (6th Cir. 2010); then quoting White v. Baxter Healthcare Corp., 533 F.3d 381, 402 (6th Cir. 2008)). Costco contends that it is entitled to summary judgment on Loggins' race discrimination and age discrimination claims because Loggins does not allege that he suffered a materially adverse employment action.

Loggins "agrees that he has not suffered a materially adverse action . . . ." (ECF No. 39-1 at 719.) He contends, however, that this "is not fatal to [his] Title VII and ADEA claims . . . ." (Id. at 719.) Loggins cites no authority for his contention. "In the absence of an adverse employment action, a plaintiff cannot sustain a discrimination claim." Block v. Meharry Med. Coll., 723 F. App'x 273, 278 (6th Cir. 2018). Whether a plaintiff proceeds on direct or circumstantial evidence makes no difference. See Policastro, 297 F.3d at 539 n.1. Because Loggins concedes that he has not suffered an adverse employment action, his race and age discrimination claims fail as a matter of law. Costco's Motion for Summary Judgment on Loggins' race and age discrimination claims is GRANTED.

**D.  Retaliation**

"A plaintiff in a Title VII or ADEA action may establish retaliation either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an

inference of retaliation." Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 543 (6th Cir. 2008). "Direct evidence is that evidence which, if believed, requires no inferences to conclude that unlawful retaliation was a motivating factor in the employer's action." Id. at 543-44.

Loggins cites no direct evidence of retaliation, such as an explicit statement by Kauffman or Bowden that they were taking an adverse employment action in response to Loggins' internal discrimination claim. He relies instead on circumstantial evidence.

When a plaintiff advances a circumstantial case for retaliation, the McDonell Douglas/Burdine evidentiary framework used to assess discrimination claims applies. Id. at 544. The plaintiff has the initial burden to establish a prima facie case of retaliation by showing that (1) he engaged in protected activity, (2) this exercise of his protected activity was known to the defendant, (3) the defendant thereafter took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action. Id. "The burden then shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for its actions once the plaintiff presents sufficient evidence to make out a prima facie case. If the defendant satisfies this

burden, the plaintiff must then demonstrate by a preponderance of the evidence that the legitimate reason offered by the defendant was not its true reason, but instead was a pretext designed to mask retaliation." Id. (citation omitted).

**Prima Facie Case**

Costco contends that it is entitled to summary judgment on Loggins' retaliation claims because Loggins fails to cite sufficient evidence that he suffered an adverse employment action. Loggins cites the counseling notices he received after he filed his internal complaint as evidence of retaliation.[5]

An adverse employment action in the retaliation context is broader than in the discrimination context. See Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 345 (6th Cir. 2008). It is "not limited to an employer's actions that solely affect the terms, conditions or status of employment, or only those acts that occur at the workplace." Id. An adverse employment action for a retaliation claim is one that "could well dissuade a reasonable

---

[5] Loggins also contends that he was given "write-ups" that "tend[ed] to track the dates of [his] protected activities." (ECF No. 39-1 at 724.) Loggins, however, cites no evidence for these unspecified write-ups. Loggins does not contend that the counseling notices amounted to an adverse employment action. He contends instead that "retaliation can, like claims of discrimination, be based upon hostile environment. . . . When based on hostile environment, such retaliation does not require a showing of adverse action." (Id.) Loggins cites no authority for this proposition. It is not well-taken. As discussed infra, Loggins fails to cite sufficient evidence that he suffered from a hostile work environment.

worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006).

The antiretaliation provisions of Title VII and the ADEA "protect[] an individual not from all retaliation, but from retaliation that produces an injury. . . ." Burlington, 548 U.S. at 67. The type or severity of injury required to dissuade a reasonable worker from making or supporting a charge of discrimination has been described in different terms. In Burlington, the Supreme Court gave an example of an action that could be sufficiently injurious because it impacted "the employee's professional advancement . . . ." Id. at 69. Some Sixth Circuit cases have followed this example. See Szeinbach v. Ohio State Univ., 493 F. App'x 690, 695 (6th Cir. 2012) (denying summary judgment because there were disputed material facts about whether an investigation "had a significant negative impact on [plaintiff's] professional advancement"); Lahar v. Oakland Cty., 304 F. App'x 354, 357 (6th Cir. 2008) (reprimands were not an adverse employment action because there was no evidence that they "affected [plaintiff's] . . . prospects for advancement"). Some Sixth Circuit cases describe the required action as something more specifically injurious. See Cregget v. Jefferson Cty. Bd. of Educ., 491 F. App'x 561, 566 (6th Cir. 2012) ("A written reprimand, without evidence that it led to a materially adverse consequence

13

such as lowered pay, demotion, suspension, or the like, is not a materially adverse employment action.") Others describe less severe injuries, such as a "disciplinary action" or a "pattern of intimidation," as potentially sufficient to dissuade a reasonable worker. Taylor v. Geithner 703 F.3d 328, 338 (6th Cir. 2013).

Loggins fails to cite sufficient evidence of an adverse employment action under any formulation. Counseling notices and their attendant counseling meetings are not by themselves enough. See Hall v. Dekalb Cty. Govt., 503 F. App'x 781, 790 (11th Cir. 2013) ("Plaintiff's written counseling . . . was not materially adverse because he failed to allege that it had any significant impact on his employment."); McKinney v. G4S Govt. Sols., Inc., 179 F. Supp. 3d 609, 630 (W.D. Va. 2016) ("[Plaintiff] has not presented any evidence that the two employee counseling 'write-ups' could contribute to a demotion or termination."). Loggins cites no evidence that his August 30, 2016, October 7, 2016, and February 7, 2017 counseling notices negatively affected his professional advancement. It is undisputed that Loggins was not demoted, suspended, or had his pay lowered because of his counseling notices.

Loggins does not cite sufficient evidence that the counseling notices were disciplinary actions. He cites no ramifications from having received them. He cites nothing about how counseling

14

notices factor into promotion, demotion, or termination decisions. He cites no evidence about a Costco disciplinary policy and how counseling notices fit into it. The counseling notice forms describe their purpose in primarily constructive terms:

> The purpose of this Employee Counseling Notice is to alert you to the fact that your performance and/or behavior is not meeting Costco's expectations and is in violation of Costco's policies. The goal of this Notice is to provide you with constructive feedback what will help you to perform your job duties to the best of your abilities, while also complying with Costco's expectations and policies.

(ECF No. 28-7 at 472.)

The counseling notices do say that, "further violations of company policy can result in <u>additional disciplinary action</u>, up to and including termination." (<u>Id.</u> (emphasis added).) The use of "additional" could suggest that counseling notices are included among Costco's disciplinary actions. That possibility would not permit a reasonable jury to find in Loggins favor without more evidence about how counseling notices could injure a reasonable employee such that he would be dissuaded from making a charge of discrimination. Loggins cites no such evidence. He fails to satisfy his <u>prima facie</u> burden. Costco's Motion for Summary Judgment on Loggins' retaliation claims is GRANTED.

### E. Hostile Work Environment

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult

15

that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). To establish such a claim, Loggins must show that: (1) he belonged to a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on age or race; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; and (5) Costco knew or should have known about the harassment and failed to act. See Waldo v. Consumers Energy Co., 726 F.3d 802, 813 (6th Cir. 2013).

To determine whether the alleged harassment meets that standard, the Court must consider the totality of the circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance." Id. at 23. The Court must use both an objective and a subjective test: "the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard the environment as abusive." Bowman v. Shawnee State Univ., 220 F.3d 456, 462 (6th Cir. 2000).

Costco contends that Loggins' hostile work environment claim fails because Loggins has not cited sufficient evidence to show that the alleged conduct was based on Loggins' age or race or that the harassment was severe or pervasive enough to create an actionable hostile work environment. Costco's argument is well-taken.

Loggins' counseling notices are not sufficient evidence of a hostile work environment. Loggins offers no evidence, other than his own speculation, that they are based on his race or age. Loggins cites nothing to rebut Costco's evidence that it had a legitimate reason for issuing each counseling notice.

Loggins does not cite sufficient evidence that he suffered severe and pervasive harassment based on his race. The only evidence Loggins cites is his deposition testimony that Sommerville told him that Bowden used a racial epithet to describe Sommerville. Loggins does not allege that such a comment was made to him or that he ever heard such a comment. Putting aside the fact that this evidence is hearsay, a single, second-hand comment about someone other than Loggins is not sufficient to create a hostile work environment for Loggins based on his race.[6]

---

[6] Loggins cites no evidence for his contention that Bowden used a racial epithet in conversation with Boslaugh. Even if Loggins had, it would make no difference. Loggins does not allege that such a comment was ever made to him or that he ever heard such a comment.

Loggins does not cite sufficient evidence that he suffered severe and pervasive harassment based on his age. Loggins' allegations that Kaufman made ten to fifteen remarks that Loggins was "too old" or "too slow," that Kaufman gave him an energy drink, and that Bowden made one remark about Loggins' age cannot establish that Loggins was subject to severe and pervasive harassment. The Sixth Circuit has found more egregious harassment insufficiently severe and pervasive to sustain a hostile work environment claim. See Snyder v. Pierre's French Ice Cream Co., 589 F. App'x 767, 769, 773 (6th Cir. 2014) (finding that a manager calling plaintiff "old man" and "too slow" on a daily basis, regularly asking plaintiff if he needed a walker or a cane, and saying that he would not have hired plaintiff because plaintiff was too old was not enough to establish severe and pervasive harassment).

Costco's Motion for Summary Judgment on Loggins' hostile work environment claim is GRANTED.

## V. Conclusion

For the foregoing reasons, Costco's Motion for Summary Judgment is GRANTED.

So ordered this 21st day of May, 2019.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE